## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN HENRY and NAJEH DAVENPORT, on behalf of themselves and others similarly situated, <br><br>                    Plaintiffs <br><br>      v. <br><br> NATIONAL FOOTBALL LEAGUE and NFL PROPERTIES LLC, successor-in-interest to NFL Properties, Inc., <br><br>                    Defendants. | No. 20-cv-04165-AB <br><br> Complaint – Class Action |
| THIS DOCUMENT RELATES TO: <br><br> MDL No. 2323 | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
NFL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY ................................................................................................. 3

ARGUMENT ....................................................................................................................... 7

I.  Plaintiffs' Complaint Is an Improper Collateral Attack on the Judicially-Approved
    Settlement Agreement ............................................................................................... 7

    A.  There Is No Mandate or Presumption That Norms Must Be Used by the
        Independent Clinicians ................................................................................... 8

II.  The Complaint Is Improper Even If It Challenges the Settlement's Administration ....... 14

III. Plaintiffs Do Not State a Claim Under Section 1981 ...................................................... 15

IV.  The NFL Defendants Do Not Object to Plaintiffs' Request to Hold This Motion to
     Dismiss in Abeyance Pending the Third Circuit's Determination of Plaintiffs'
     Appeal ......................................................................................................................... 17

CONCLUSION ..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bakkali* v. *Walmart, Inc.*,
No. 20-cv-3440, 2020 WL 5517350 (E.D. Pa. Sept. 14, 2020).........................................12, 17

*Bechtel Corp.* v. *Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*,
544 F.2d 1207 (3d Cir.1976).........................................................17–18

*Bell* v. *City of Milwaukee*,
746 F.2d 1205 (7th Cir. 1984) ............................................................13

*Buck* v. *Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006)................................................................3

*Comcast Corp.* v. *Nat'l Ass'n of African Am.-Owned Media*,
140 S. Ct. 1009 (2020)....................................................................17

*Dennis* v. *Trans Union, LLC*,
No. 14-cv-2865, 2016 WL 127453 (E.D. Pa. Jan. 12, 2016)...................................18

*In re Diet Drugs.*,
706 F.3d 217 (3d Cir. 2013)...............................................................15

*Doe* v. *Lower Merion Sch. Dist.*,
665 F.3d 524 (3d Cir. 2011)...............................................................17

STATUTES

42 U.S.C. § 1981.........................................................................15

The NFL Defendants respectfully submit this memorandum of law in further support of their motion to dismiss Plaintiffs' Complaint for failure to state a claim.[1]

## PRELIMINARY STATEMENT

The NFL Defendants' Opening Brief established that the Complaint is an impermissible collateral attack on the terms of a judicially-approved Settlement Agreement, and, in any event, does not plead facts sufficient to sustain a claim against the NFL Defendants. Plaintiffs' Answering Brief only confirms the deficiency of their pleading.

Plaintiffs concede, as they must, that they cannot collaterally attack the Settlement Agreement, which was approved by the District Court more than five years ago and which on its face—and without objection by these Plaintiffs or any other members of the Settlement Class—expressly states that demographic considerations, including race, may be used by independent clinicians (consistent with standard practice in the neuropsychological community) in diagnosing cognitive impairment in the Settlement Program. Recognizing as much, Plaintiffs assert that they do not challenge the choice by independent clinicians to use race-based demographic norms in connection with their evaluations (consistent with the clear terms of the Settlement Agreement), but instead challenge the "administration" of the Settlement Program which, according to Plaintiffs, has displaced clinicians' individualized medical judgment with a Program-wide "mandate" or "presumption" that race-based demographic norms must be used (even though the Special Masters' ruling on this very issue confirms that no such mandate or presumption exists).

Plaintiffs' purported recast of their Complaint as a challenge to the "administration" of the Settlement Program—as opposed to a collateral attack on the Settlement Agreement—is

[1] Unless otherwise defined, capitalized terms have the meanings set forth in the NFL Defendants' Opening Brief ("OB"). Citations to "AB" are to Plaintiffs' Answering Brief.

both disingenuous and in vain.  In the first place, Plaintiffs offer no factual support for their claim that the "administration" of the Settlement Agreement has departed in any respect from its agreed terms; indeed, Plaintiffs' claim that a "mandate" or "*de facto* requirement" has been created is contradicted by the very evidence they invoke—including the Special Masters' Determination and even their own claims.  Further, Plaintiffs have offered not a shred of evidence that independent clinicians in the Settlement Program have applied race-based demographic norms on any basis other than their best medical judgment.  Given that Plaintiffs do not contest (and their own expert has conceded) that such adjustments are widely used in the neuropsychological community to achieve diagnostic accuracy, the *only* reasonable inference is that they have been applied by the independent clinicians in the Settlement Program based on their best medical judgment to achieve that same end.  Plaintiffs' suggestion to the contrary is a serious charge that impugns the integrity and professionalism of these independent clinicians but lacks any foundation whatsoever.

Moreover, in framing their Complaint as a challenge to the "administration" of the Settlement Program, Plaintiffs underscore the procedural impropriety of this action and their misguided choice of defendants.  The NFL Defendants—the only defendants named in the Complaint—do not administer the Settlement Program; the Settlement Program is administered by the independent Claims Administrator, the independent BAP Administrator, the independent Special Masters, and the Court.[2]  Further, the Settlement Agreement makes clear that any challenge to the "interpretation, implementation, ***administration***, [or] enforcement" of the Settlement Agreement must be made by motion to the Court under the Settlement Agreement (Settlement

---

[2]  Plaintiffs' Section 1981 claim against the NFL Defendants likewise fails for these same reasons (among others): it rests on the false premise that race-based norms are mandated or presumed; and, because the NFL Defendants do not administer the Settlement, they are not appropriate defendants in connection with a claim of purported discrimination in the Settlement's administration.

Agmt. § 27.1 (emphasis added)), and not through some "end run," as Plaintiffs have attempted here.

Perhaps for this reason, Plaintiffs now seek to put this action, and the NFL Defendants' motion to dismiss it, on hold. Instead, Plaintiffs would prefer that their Motion for Relief—filed the same day as this Complaint and raising identical issues and arguments, but filed in the MDL (the appropriate forum for questions of interpretation, implementation, and administration)—be decided first.[3] While the NFL Defendants believe that their Motion to Dismiss the Complaint is compelling and should be granted, the NFL Defendants do not object to staying this action (and staying the NFL Defendants' motion to dismiss it) if the Court believes that would conserve judicial resources—which have been needlessly taxed as a result of Plaintiffs' multiple, overlapping, and contradictory filings.

## PROCEDURAL HISTORY

Plaintiffs commenced this putative Class Action on the same day they filed a Motion for Relief in the Settlement Program (the "Motion").[4] Both actions, at their core, contest

---

[3] Failing that, Plaintiffs request leave to amend their Complaint to incorporate all of the material included in their Motion for Relief, and indeed, purport to incorporate that material by reference in their Answering Brief. (AB 6, 10.) The Complaint's defects, as discussed herein, are fatal to Plaintiffs' claims, so any amendment would be futile.

[4] Plaintiffs expressly incorporate, and this Court can thus consider, "the filings related to the Motion and the Objection [filed by Najeh Davenport to the Special Masters' Determination]." (AB at 6); *Buck* v. *Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, . . . and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).

Citations to "Mot. Br." will be to the Brief in Support of Motion for Relief under Article XXVII of the Settlement Agreement or for Relief from Judgment (*In re. Nat'l Football League Players' Concussion Inj. Litig.*, ECF No. 11169-1, No. 12-md-02323 (E.D. Pa. Aug. 25, 2020)); citations to "Mot. Opp." will be to the NFL Parties' Opposition to Kevin Henry's and Najeh Davenport's Motion for Relief (*In re. Nat'l Football League Players' Concussion Inj. Litig.*, ECF No. 11204, No. 12-md-02323 (E.D. Pa. Oct. 8, 2020)); citations to "Mot. Reply" will be to the Reply in Support of Motion for Relief under Article XXVII of the Settlement Agreement, or for Relief from Judgment (*In re. Nat'l Football League Players' Concussion Inj. Litig.*, ECF No. 11222, No. 12-md-02323 (E.D. Pa. Nov. 2, 2020)); references and citations to "Objection Opposition" or "Obj. Opp." will be to the Response of the National Football League and NFL Properties LLC in Opposition to Settlement Class Member Najeh Davenport's Objection to the Special Masters' August 20, 2020 Decision (*In re. Nat'l Football League*

---

the consideration of race as one demographic factor in diagnosing cognitive impairment under the Settlement Agreement—mislabeling this widely accepted practice (which was developed by leading neuropsychologists to *redress* racial bias in cognitive testing) as blatant race discrimination. (*See, e.g.*, Mot. Br. at 22 ("The use of race-norming is a blatant instance of race discrimination in the administration of justice."); *id.* at 19 ("The use of race-norming . . . represents an explicit, deliberate, race-based classification that cannot survive strict scrutiny. . . . [T]he Court should therefore declare that it is unlawful."); Compl. ¶¶ 1, 29 (referring to the widespread practice of including race among the demographic features used to norm test results as a "formula for identifying qualifying diagnoses that explicitly and deliberately discriminates on the basis of race" and a "racially discriminatory manipulation").) The Motion for Relief, among other things, seeks the re-norming of test results for all Black Settlement Class Members without the inclusion of race among demographic factors considered, while this putative class action seeks a damages award for pain and suffering allegedly experienced by members of the putative class.[5]

The NFL Defendants' arguments in opposition to both filings are essentially the same. Neither the Motion for Relief nor the putative class action is proper because each challenges the judicially-approved terms of the Settlement Agreement, which expressly provide for the very considerations that Plaintiffs attack as racially discriminatory. Specifically, the Settlement Agreement explicitly states that (1) clinicians may choose among three methodologies in estimating pre-injury cognitive ability (as is common practice), two of which consider demographic factors, including **"race/ethnicity,"** (2) clinicians will "demographically-adjust[]" all neuropsychological test scores, and the 22 tests that make up the BAP battery were specifically

---

*Players' Concussion Inj. Litig.*, No. 12-md-02323 (E.D. Pa. Oct. 8, 2020)).

[5]    (Mot. Br. at 2–3; Compl. ¶ 38.)

selected **"based on the availability of demographically adjusted normative data for [both]
Caucasians and African Americans,"** and (3) a "user manual" (the Clinician's Interpretation
Guide) would be created and "provided to neuropsychologists **setting out the . . . normative
data**." (Settlement Agmt. Ex. 2 §§ 3, 4 (emphasis added).) Thus, the Settlement Agreement
clearly contemplated (and disclosed) that clinicians would be able to use race as one demographic
factor in estimating pre-injury cognitive ability and in computing demographically-adjusted test
scores of current cognitive ability.

While this Court heard more than 80 written objections to the design of the
Settlement Program and the neuropsychological testing regime in particular, no objection was ever
raised to the potential use of demographic adjustments—including race-based adjustments—in
administering the neuropsychological testing. (Mot. Opp. at 4.) As the NFL Defendants
explained, it is likely that no such objections were brought because this use of race among other
demographic factors in assessing the results of cognitive testing is widely accepted in the
neuropsychological community and, indeed, was developed by that community in order to correct
for bias in cognitive testing which, without such adjustment, misdiagnosed Black test-takers—
incorrectly characterizing healthy individuals as cognitively impaired—at up to three times the
rate of White test-takers.[6]

Plaintiffs' Answering Brief acknowledges the existence of these Settlement terms.
(AB at 3 ("The Settlement Agreement notes the 'availability' of race-based reference population
data that are 'demographically adjusted . . . for Caucasians and African Americans' . . . ."); *id.* at
9 ("The NFL points out that the Settlement Agreement provided that clinicians would be provided
a user manual 'setting out the . . . statistical and normative data.'").) Because Plaintiffs (and all

---

[6]  (Mot. Opp. at 13–18; OB at 13–15.)

other class members) failed to object to these terms (or opt out), they now strain to make clear in their Reply Brief on their Motion for Relief, as in their Answering Brief here, that they are not *technically* collaterally attacking these terms of the Settlement, because they are **not** alleging race discrimination with respect to the independent choice by clinicians to use race among other demographic factors in norming neuropsychological test results (a process that was indisputably contemplated by the Settlement's express terms).  (*See, e.g.*, Mot. Reply at 5 (noting "there would be no need for the Motion or the relief it seeks" if clinicians were making individualized assessments and using their best medical judgment in choosing race-based norms).)  Instead, Plaintiffs assert that they only challenge and claim race discrimination with respect to the "administration" of the Settlement Program, which they claim has created a "*de facto* requirement of race-norming" leading clinicians to adopt "a policy of blanket race-norming" irrespective of their best clinical judgment.  (AB at 8–9.)

Plaintiffs' unavailing attempt to reframe their allegations has not yet been addressed by this Court.  This Court denied the Motion without prejudice on the ground that Plaintiffs must first exhaust their administrative remedies, noting that Claimant Davenport's claim was remanded and still has not been finally determined.[7]  Claimants appealed this Court's denial of the Motion to the Third Circuit (the "Appeal") and the Third Circuit ordered preliminary briefing on the question of whether it has jurisdiction to entertain the Appeal given that the dismissal was without prejudice to renewal after exhaustion of administrative remedies.[8]

---

[7]  (*See* Order, ECF No. 11237, *In re. Nat'l Football League Players' Concussion Inj. Litig.*, No. 12-md-2323 (E.D. Pa. Nov. 20, 2020).)

[8]  (*See* Order, ECF No. 3, *In re. Nat'l Football League Retired Players' Concussion Inj. Litig.*, No. 20-3401 (3d Cir. Dec. 2, 2020).)

In their Answering Brief, Plaintiffs nonetheless suggest that the issues have been "argued at greater length" in connection with their Motion. (AB at 8.) Thus, Plaintiffs request that the Court stay this case (and the NFL Defendants' Motion to Dismiss), pending determination of the issues in connection with the Motion. (AB at 10.) While Plaintiffs appear to suggest that the substantive questions in Plaintiffs' Motion will be resolved by the Third Circuit in connection with the Appeal,[9] that is not the case. Even if the Third Circuit determines that it has jurisdiction to hear the Appeal, the District Court Order subject to the Appeal merely determined the question of whether Plaintiffs were required but failed to exhaust Settlement Program remedies prior to filing the Motion; accordingly, that is the only question within the scope of review on the Appeal. This Court will ultimately determine the merits of the Motion (on remand or otherwise) before the Third Circuit can ever consider them. Thus, the NFL Defendants defer to the Court's view on whether to stay this action. Should the Court determine to proceed, however, for the reasons below and in the NFL Defendants' Opening Brief, the Complaint should be dismissed.

## ARGUMENT

### I. Plaintiffs' Complaint Is an Improper Collateral Attack on the Judicially-Approved Settlement Agreement

Nothing in Plaintiffs' opposition refutes the NFL Defendants' showing in their Opening Brief that Plaintiffs' Complaint should be dismissed because it constitutes a collateral attack on the terms of a judicially-approved class action Settlement Agreement and is thus foreclosed under settled Third Circuit law.

Plaintiffs expressly concede, as they must, that "[o]nce a class settlement agreement has been finally approved, its *terms* are immune from collateral attack on the theory that Class

---

[9] (AB at 2 ("[T]he . . . issue of Settlement Agreement construction . . . is now before the Third Circuit on a full record.").)

Members had a fair opportunity to review the terms and object or opt out before the agreement was approved." (AB at 9 (citing *In re Diet Drugs Prods. Liability Litig.*, 431 F.3d 141, 145–46 (3d Cir. 2005)).) That is precisely the case here, and Plaintiffs' after-the-fact focus on the "administration" of the Settlement Program—relying on a supposed mandate or presumption of race norming in the Program—cannot salvage their Complaint from dismissal on this ground.

As the Opening Brief made clear, there has never been any mandate or presumption that norms must be used in the Settlement Program—in the Clinician's Interpretation Guide, in the Special Masters' Determination, or otherwise—and any attack on the present use of race-based norms in the Program (which occurs only in independent clinicians' reasonable discretion) thus constitutes an improper collateral attack on the Settlement's terms, which made clear that race-based norms would be available for use by clinicians. Moreover, because Plaintiffs now admit that this action targets the administration of the Settlement Program, there is no dispute that Plaintiffs were required to bring their putative grievances as a motion within the Settlement Program and not as a separate Complaint against the NFL Defendants.

### A. There Is No Mandate or Presumption That Norms Must Be Used by the Independent Clinicians

The obvious inference from the Settlement Agreement's disclosure that cognitive tests were selected "based on" the availability of race-based norms is that such norms would be used in the Settlement Program. In fact, it would not have been unreasonable to infer that such norms would be mandatory. During the lengthy review process that led to the approval of the Settlement, nobody sought to clarify that point; but, contrary to the false premise on which Plaintiffs rest their opposition, they are not. As has been made clear in the course of the Settlement's administration, the use of normative adjustments rests solely in the independent clinicians' reasonable, professional discretion.

Plaintiffs' reliance on the Program's Clinician's Interpretation Guide to try to show otherwise is both misguided and unavailing. The Clinician's Interpretation Guide—jointly negotiated by the NFL Defendants and Class Counsel under the guidance of their respective experts and in collaboration with the Court-appointed neutral BAP Administrator in consultation with its own experts—merely "recommended" the use of "full" demographic normative corrections (which would include race-based norms). (*See* Special Masters' Determination at 9.) The Clinician's Interpretation Guide has thus never—on its face or in effect—mandated or presumed that race-based norms must be used, contrary to Plaintiffs' contentions. Indeed, the Special Masters appointed by this Court have expressly confirmed that fact, finding that it is "*obvious[ ]*" from the text of the Clinician's Interpretation Guide that "[t]he Settlement's drafters were . . . concerned not to predetermine which particular kinds of demographic adjustment (i.e., for race, or socioeconomic status) were the gold standard, or were universally appropriate" and therefore "admirabl[y]" provided "discretionary language" in the Guide, which "expresses a set of default best practices, but *expressly does not mandate them*." (Special Masters' Determination at 10 (emphasis added).)[10] Nor is it credible that a mere recommendation would have influenced a clinician to use "full" demographic—including race-based—norms if that was contrary to their best medical judgment. Notably, Plaintiffs received the Special Masters' Determination—which squarely contradicts their central claim that race-based norms are mandatory or presumptive—and nevertheless proceeded to file the present Complaint just one day later.

Plaintiffs' contention that the Special Masters' Determination itself created an improper "presumption" that race-based norms be used is equally unfounded. Plaintiffs

---

[10] Plaintiffs concede that this Court can take judicial notice of the Special Masters' Determination and its contents. (AB at 3 n.1.)

mistakenly argue that the Special Masters' Determination requires that "any clinician who desires *not* to employ race-based adjustments must affirmatively justify that decision with reference to his or her general practice or the individual Claimant's circumstances." (AB at 4.) According to Plaintiffs, because no such affirmative justification is required if race-based norms are used, this putatively one-sided requirement "entrench[es] a presumption in favor of race-norming." (*Id.*) While Plaintiffs do not say it explicitly, they appear to be arguing that clinicians will abandon their best medical judgment in choosing norms, and instead choose those that require the least administrative paperwork; otherwise, the putatively one-sided required explanation would not interfere with their rights under the Settlement Agreement because it does not prevent clinicians from exercising—and indeed expressly permits them to exercise—their medical discretion in choosing whether to apply race-based norms, and Plaintiffs agree that such discretionary use of norms is appropriate. But any supposition that clinicians will be deterred from exercising their best medical judgment merely because a particular choice requires a written explanation does a grave injustice to the integrity of these medical professionals. In all events, the factual premise of Plaintiffs' contention—that the Special Masters' Decision imposed a one-way requirement for an affirmative explanation—is simply wrong.

The Special Masters' Determination on its face imposes no such requirement. It merely confirms that the Claims Administrator "*may*," in its discretion, reach out to clinicians to seek clarification on whether they followed their standard clinical practice in determining whether to apply full demographic normative adjustments. (Special Masters' Determination at 11 (emphasis added).) Such inquiry by the Claims Administrator is neither automatic nor required— and it is by no means novel. As the Special Masters noted, the Claims Administrator has always had the "well-founded authority to investigate the sufficiency of the records leading to the

Diagnosis," including by asking follow-up questions of clinicians regarding various aspects of their diagnostic evaluations. (*Id.* at 12.)[11]  Indeed, the Claims Administrator's authority in this regard is critical because, as the Special Masters correctly noted, it is possible a clinician may "decide[] to adjust [for race], or not, as a way of achieving a financial result for a particular player." (*Id.* at 11.)  Unfortunately, as the Court is well aware, there is a long history in the Settlement Program of certain clinicians manipulating their techniques to achieve desired results rather than accurate diagnoses—indeed, several clinicians have been disqualified for such improper practices. (*See* Obj. Opp. at 2.)  The Claims Administrator's authority to seek clarification from clinicians where it has questions or concerns is thus well-founded, uncontroversial (and critical).

Finally, Plaintiffs' suggestion that the NFL Defendants' appeals of certain claim determinations have resulted in a "*de facto* requirement of race norming" is meritless. (AB at 8.) While the NFL Defendants have raised clinicians' failures to apply full demographic normative adjustments in the context of certain appeals (often because the Retired Player's neuropsychologist took an inconsistent approach to normative adjustments, including varying norms across different tests in a single evaluation), Plaintiffs have pleaded no facts in support of their contention that the NFL Defendants' confidential submissions on such individual appeals have caused clinicians "in the vast majority of cases" to  use race-based norms "[a]t the NFL's insistence" (*id.* at 12), rather than based on the clinicians' own medical judgment.  In fact, the allegation is not credible on its face.  The NFL Defendants' confidential appeal briefs relating to individual claim determinations

---

[11]   (*See also* Obj. Opp. at 8–10 (noting that the Third Circuit-approved MAF Rules expressly permit the Claims Administrator "to obtain information from the examining neuropsychologist in a wide range of circumstances, including those that 'present significant questions about the Qualifying Diagnosis or diagnostic work of the diagnosing physician or supporting neuropsychologist."); *id.* at 9 n.3 (noting the Special Masters' recent finding, in connection with a separate claim unrelated to the application of race normative adjustments, that the "*Claims Administrator possesses ample authority to require a complete explanation, and to ensure it is internally consistent*" (internal quotations and citations omitted)).)

are not even provided to clinicians and certainly do not guide independent clinicians' evaluations (only the Special Masters' published determinations on those appeals do that). And, critically, Plaintiffs plead no facts to support an inference that the neuropsychologists that apply race-based norms are doing so against their best clinical judgment.[12] Thus, no such inference is warranted here.

Indeed, if, as Plaintiffs speculate, Program clinicians are using race-based norms in the "vast majority" of cases (*id.*), the *only* reasonable inference that can be drawn from Plaintiffs' pleadings is that those clinicians are doing so because such norms are, as the NFL Defendants' Motion Opposition established and as Plaintiffs' own expert expressly conceded, widely used in standard clinical practice. (*See* Mot. Opp. at 19 (citing a "study [which] showed that a majority of clinicians use race normative adjustments 'when interpreting cognitive scores of ethnic/racial minorities.'" (internal citations omitted)); Decl. of Jennifer J. Manly ¶ 9, ECF No. 11222-1, *In re. Nat'l Football League Players' Concussion Inj. Litig.*, No. 12-md-02323 (E.D. Pa. Nov. 2, 2020) ("Dr. Millis's central argument is that 'it was and is widely-used and commonly-accepted neuropsychological clinical practice to consider demographic factors, including race, when assessing premorbid intellectual functioning, and in choosing normative adjustments to scale an individual's raw scores on cognitive tests.' I agree . . . .").)

Moreover, both of Plaintiffs' Monetary Award claim submissions contradict the allegation that clinicians believe race-based norms are mandated or presumed: clearly, neither

---

[12] While Plaintiffs are correct that they are entitled to have "reasonable" inferences drawn in their favor, "a complaint must allege facts 'to raise a right to relief above the speculative level.'" *Bakkali* v. *Walmart, Inc.*, No. 20-cv-3440, 2020 WL 5517350, at *2 (E.D. Pa. Sept. 14, 2020) (quoting *Umland* v. *Planco Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008)). Plaintiffs must "plead[] *factual content* that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added)). In the Complaint, Plaintiffs have offered no facts to support a reasonable inference that clinicians have used race-based norms against their better clinical judgment as a result of the NFL Defendants' confidential appeal submissions—or based on the Clinician's Interpretation Guide, the Special Masters' Determination, or any other basis.

neuropsychologist supporting Mr. Henry's or Mr. Davenport's claim submission felt coerced into following the Clinician's Interpretation Guide's "recommendation," as neither used full demographic normative corrections. (*See* Mot. Opp. at 23–24.) In fact, Mr. Davenport's claim was *approved*, but was remanded because the clinician "refus[ed] to fully cooperate" with the Claims Administrator's follow-up questions on appeal and it thus was unclear what process he used in scoring Mr. Davenport's test results. (*See id.*; *see also* Special Masters' Determination at 12.) Mr. Henry's claim was denied on the *independent ground* that he failed multiple performance validity measures (clinically standard tests required by the Settlement Agreement that are designed to determine whether the test-taker is feigning impairment). (Mot. Opp. at 23.)

It is thus clear, from the Clinician's Interpretation Guide, the Special Masters' Determination construing the Guide, and Plaintiffs' own claims, that the use of race-based norms is neither mandatory nor presumed and has always been left to clinicians' reasonable discretion. Because such use was expressly contemplated by the Settlement Agreement, any attack against the current use of race-based norms in the Program constitutes an improper collateral attack on the Settlement itself.[13]

---

[13]  Tellingly, Plaintiffs cannot cite to a single case supporting the procedural propriety of its present claims which, at bottom, challenge conduct expressly permitted under the Settlement Agreement. Instead, Plaintiffs misleadingly cite a single (and inapposite) case, purportedly supporting the proposition that "a civil rights claim" can "lie for damages arising from defendants' acts . . . continuing past [a] prior [settled] action." *Bell* v. *City of Milwaukee*, 746 F.2d 1205, 1226–28 (7th Cir. 1984). In *Bell*, the Seventh Circuit held that an individual could bring a civil rights claim notwithstanding his prior settlement of claims that were "based upon the same factual happening" (a police shooting), because the defendants had previously concealed operative facts regarding the shooting through "fraud, concealment, and a broad-based cover-up," and thus the settlement could not "be used to preclude future claims and in so doing redound to the benefit of defendants." *Id.* Indeed, Plaintiffs misleadingly excise the bolded text from their quote of *Bell*: "[c]learly a civil rights claim would lie for damages arising from defendants' acts *of concealment* continuing past the prior action." *Id.* (emphasis added).

## II. The Complaint Is Improper Even If It Challenges the Settlement's Administration

Even if, as Plaintiffs suggest, their present claim constitutes a challenge to "the *administration* of the MDL Settlement Agreement" rather than a collateral attack on the Settlement's terms, their Complaint is still procedurally barred.  (AB at 8.)

As a preliminary matter, the NFL Defendants do not administer the Settlement Agreement or implement its terms.  Independent clinicians determine whether to apply race-based norms in their own discretion free of any influence by the NFL Defendants; a neutral Claims Administrator approves or denies any claims submitted on the basis of independent clinicians' evaluations (again, free of any influence by the NFL Defendants and sometimes in consultation with neutral neurology and neuropsychology experts appointed by this Court); and all parties have a right to appeal the Claims Administrator's claim determinations (which appeal briefs, as discussed, are confidential and do not create any Settlement administration guidelines).  It is thus improper (and misdirected) for Plaintiffs to bring a challenge to the Settlement's administration through a separate Complaint against the *NFL Defendants*.

The correct way for Plaintiffs to bring a challenge to the Settlement's administration and implementation is by motion to the Court in connection with the Settlement Program itself (as in fact they have done as part of their multi-front filings).  Plaintiffs selectively quote the Settlement Agreement's statement that the parties to the Settlement have subjected themselves to the Court's jurisdiction with respect to any "suit, action, proceeding, or dispute" relating to the Settlement Agreement, claiming this provision contemplates the possibility that a separate action could be brought in connection with the Settlement Agreement.  (AB at 11 (internal quotations and citations omitted).)  But Plaintiffs conveniently and misleadingly ignore that the Settlement Agreement *expressly* states that the specific type of challenge Plaintiffs purport to bring here (a challenge to the Settlement's interpretation and administration) *must* be made by motion

to the Court rather than in such a separate proceeding: "Any disputes or controversies arising out of, or related to, the *interpretation, implementation, administration, and enforcement* of this Settlement Agreement *will be made by motion to the Court*." (Settlement Agmt. § 27.1 (emphasis added).) Indeed, Plaintiffs have brought such a Motion. That the Court denied Plaintiffs' Motion—*without prejudice* to Plaintiffs' refiling once they exhaust Settlement Program remedies—does not provide any grounds for Plaintiffs to contravene the clear terms of the Settlement Agreement and file a Settlement administration dispute as a separate proceeding against the NFL Defendants.

Plaintiffs are thus indisputably procedurally barred from sustaining the present action even if, as Plaintiffs contend, it solely attacks the *administration* of the Settlement and not its terms.

## III. Plaintiffs Do Not State a Claim Under Section 1981

Plaintiffs' Section 1981 claim is likewise foreclosed by their pleadings.

*First*, as discussed, the use of race-based norms in the Settlement Program lies solely within the reasonable discretion of independent clinicians and is not mandated or presumed. (*See supra* § I.A.) Plaintiffs' Section 1981 claim is thus moot as Plaintiffs do not and cannot allege that such *discretionary* (rather than mandatory or presumptive) use of norms violates Section 1981, and indeed Plaintiffs have separately conceded that such use is proper and they do not challenge it. (Mot. Reply at 4–5.)[14]

---

[14] The NFL Defendants note that race-based normative adjustments are commonly accepted and widely used in a wide variety of medical practices, and thus are often incorporated into long-term class action settlement programs that require diagnostic evaluations. *See, e.g.*, *In re Diet Drugs.*, 706 F.3d 217, 221–22 (3d Cir. 2013) (settlement incorporates a medical requirement through which "normative values [are] used to calculate a patient's percentage of lung capacity predicted at rest [and] 'are based upon averages for persons of similar height, weight, age, *ethnicity*, etc.'" (emphasis added) (internal citations omitted)). Any ruling invalidating clinicians' use of such norms would thus call into question and potentially invalidate a number of complex, heavily-negotiated, long-term settlement programs.

*Second*, Plaintiffs' effort to reframe the Complaint as an attack on the Settlement's administration further forecloses their Section 1981 claim against the NFL Defendants because, as set forth in detail above, the NFL Defendants *do not administer the Settlement*, and Plaintiffs fail to sufficiently plead that the NFL Defendants instituted—through the Clinician's Interpretation Guide, individual appeals or otherwise—any mandate or presumption that race-based norms must be used against clinicians' best judgment. (*See supra* § II.) As Plaintiffs are well aware, the Clinician's Interpretation Guide was agreed by the NFL Defendants and Class Counsel, but neither was the source of the Guide's recommendation that full demographic norms be used. Instead, as both Class Counsel and the NFL Defendants have explained, the Guide's "parenthetical recommending the use of full demographic correction was added at the recommendation of the [neutral] BAP Administrator based on input that it received from the clinical neuropsychologist on its medical panel." (Class Counsel's Memorandum in Response to Motion for Relief Under Article XXVII of the Settlement Agreement or Relief from Judgment at 7, *In re. Nat'l Football League Players' Concussion Inj. Litig.*, ECF No. 11205, No. 12-md-02323 (E.D. Pa. Oct. 8, 2020); Mot. Opp. at 5.) There is thus no basis for Plaintiffs to sue the *NFL Defendants* for any alleged discrimination in connection with the Settlement's administration.

*Finally*, in all events, Plaintiffs have not pleaded, and thus cannot sustain, a Section 1981 claim as they have not sufficiently pleaded either intent[15] or causation.[16]  (OB at 22–26.)

## IV. The NFL Defendants Do Not Object to Plaintiffs' Request to Hold This Motion to Dismiss in Abeyance Pending the Third Circuit's Determination of Plaintiffs' Appeal

While the NFL Defendants believe this case is ripe for immediate dismissal, they have no objection to Plaintiffs' request that this Court hold this Motion to Dismiss—and, as a result, this action—in abeyance pending decision on Plaintiffs' Appeal.  (AB at 10.)

"This Court has broad discretion to stay proceedings," a power that is "incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Bechtel Corp.* v. *Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir.1976) (quoting *Landis* v.

---

[15]  Plaintiffs contend they can satisfy the intent requirement of a Section 1981 claim merely by showing that a racial classification exists, but they cite almost exclusively to inapposite Equal Protection Clause cases in which courts were determining whether to apply strict scrutiny to state actors' actions.  (AB at 12.)  As set forth in the NFL Defendants' Motion Opposition, neither the Equal Protection Clause nor its strict scrutiny framework apply to Section 1981 claims.  (Mot. Opp. at 33–35.)  Moreover, the permissive use of race as one demographic factor in independent clinicians' discretion is not a race classification such that strict scrutiny would apply even in the context of an Equal Protection Clause claim involving state actors.  *Doe* v. *Lower Merion Sch. Dist.*, 665 F.3d 524, 547 (3d Cir. 2011) (finding awareness of race in the process of redistricting was not a racial classification and noting:  "[a]ppellants and the District Court conflate the consideration or awareness of race with (1) racial classifications and (2) racially discriminatory purpose. Equal protection law does not make the same conflation").  In all events, as discussed in the NFL Defendants' Motion Opposition, the use of race-based norms would easily pass strict scrutiny even if it did apply.  (*See* Mot. Opp. at 35.)

[16]  Plaintiffs likewise offer no support for their conclusory assertion that the causation pleading requirement is somehow eliminated in a Section 1981 claim where a racial classification is involved.  Plaintiffs' citation to Justice Ruth Bader Ginsburg's concurrence in *Comcast*, in which Justice Ginsburg discussed whether Section 1981 "covers only the final decision whether to enter a contract, not earlier stages of the contract-formation process," *Comcast Corp.* v. *Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1020 (2020) (Ginsburg, J., concurring), is irrelevant here.  In any event, as discussed, the Settlement Agreement does not involve a racial classification.  In addition, Plaintiffs must plead, and have not pleaded, that race is the "but for" cause of an injury that gives rise to the Section 1981 claim—"*the loss of a legally protected right*" to make and enforce contracts and receive the equal benefits of proceedings—*not* that it was the "but for" cause of just *any* genre of harm Plaintiffs feel they have experienced (*e.g.*, the emotional distress Plaintiffs allege, which they claim would not have occurred "but for" race).  *Comcast*, 140 S. Ct. at 1019 (emphasis added); *Bakkali*, 2020 WL 5517350, at *3 (same).  Plaintiffs are at pains to clarify that their Complaint (as distinct from their Motion) addresses only emotional harm (AB at 15–16); as a result, the Complaint fails to allege that race is the "but for" cause of any loss of a *legally protected right* under Section 1981.

*N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).  When deciding a motion to stay, a court typically looks to three factors:  "(1) the promotion of judicial economy; (2) the balance of harm to the parties; and (3) the duration of the requested stay."  *Dennis* v. *Trans Union, LLC*, No. 14-cv-2865, 2016 WL 127453, at \*2 (E.D. Pa. Jan. 12, 2016) (quoting *Cirulli* v. *Bausch & Lomb, Inc.*, No. 08-cv-4579, 2009 WL 545572, at \*2 (E.D. Pa. Mar. 4, 2009)).

While Plaintiffs believe that a stay pending decision on the Appeal will promote judicial economy because the Third Circuit may address the merits of the Motion, the NFL Defendants believe the merits of the Motion would never be addressed in the Appeal.  That said, if the Third Circuit determined it had jurisdiction over Plaintiffs' Appeal, and if the Third Circuit reversed the District Court's narrow determination (that Plaintiffs were required to and did not exhaust administrative remedies prior to filing the Motion) and remanded to this Court to address the merits of the Motion, judicial economy may be served by this Court's assessment of the Motion prior to this Complaint.  This is particularly true given that the Motion is the proper mechanism by which Plaintiffs should bring their present grievance to the Court's attention.  In addition, the stay would not harm any of the parties (as Plaintiffs themselves have requested it), and the stay would only be temporary.

## **CONCLUSION**

For the foregoing reasons, the NFL Defendants respectfully submit that the Complaint should be dismissed in its entirety, with prejudice, or held in abeyance pending determination of Plaintiffs' Appeal.

Dated: December 18, 2020

Respectfully submitted,

_/s/ Brad S. Karp_
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
Brad S. Karp *(admitted pro hac vice)*
Bruce Birenboim *(admitted pro hac vice)*
Claudia Hammerman *(admitted pro hac vice)*
Lynn B. Bayard *(admitted pro hac vice)*
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000

TROUTMAN PEPPER LLP
Sean P. Fahey
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel: (215) 981-4000

*Attorneys for Defendants the National Football League and NFL Properties LLC*

## CERTIFICATE OF SERVICE

It is hereby certified that a true copy of the foregoing document was served electronically via the Court's electronic filing system on the 18th day of December, 2020, upon all counsel of record.

Dated: December 18, 2020

/s/ Brad S. Karp
Brad S. Karp